UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATIA DENNY,

        Plaintiff,

v.                                                                Case No. 8:20-cv-1573-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

## I.

### A.    Procedural Background

Plaintiff filed an application for SSI (Tr. 229-50).  The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 102-20, 125-35).  Plaintiff then requested an administrative hearing (Tr. 137-39).  Per Plaintiff's request, the ALJ held a hearing at which

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

Plaintiff appeared and testified (Tr. 38-69).  Following the hearing, the ALJ issued an unfavorable decision, finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits (Tr. 19-37).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 210-12).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in in 1967, claimed disability beginning June 17, 2016, which was amended to May 22, 2017 (Tr. 22, 41, 230-31, 242, 274).  Plaintiff obtained a high school education (Tr. 42, 280).  Plaintiff did not have any past relevant work experience (Tr. 63).  Plaintiff alleged disability due to post-traumatic stress disorder (PTSD), bipolar 1 disorder, severe depression, limited range of motion and chronic pain in the right shoulder, migraines, high blood pressure, muscle cramping in her legs, foot pain, and a history of a motor vehicle accident with lower back pain, sciatica pain, and the need for a hip replacement (Tr. 279).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 17, 2017, the application date (Tr. 24).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the right shoulder, migraine headaches, lumbar spine disorder, bipolar disorder, PTSD, and schizoaffective disorder (Tr. 24).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; was limited to occasional overhead work; could not climb ladders, ropes, and scaffolds; was limited to only occasional pushing and pulling with the lower extremities, including the operation of foot pedals; must avoid concentrated exposure to bright flashing lights; was limited to simple, routine, repetitive tasks not performed in a fast-paced production environment, with only simple work-related decisions and relatively few workplace changes; and could only have occasional interaction with the general public (Tr. 27).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence of record (Tr. 28).

Considering the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff did not have any past relevant work (Tr. 30, 63).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a marker, copy machine operator, and router (Tr. 31).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 31).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity;  whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 416.920(a)(4)(i)-(iv).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age,

education, and work experience.   20 C.F.R. § 416.920(a)(4)(v).   A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284

F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) failing to properly account for work-related limitations related to Plaintiff's mental impairments and the medical opinions addressing such impairments; and (2) failing to properly consider Plaintiff's migraine headaches.  For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

### A.    Mental Impairments and Medical Opinions

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945.  To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.   20 C.F.R. § 416.945(a)(1).   In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.  20 C.F.R. §§ 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").   In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory

findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions.  20 C.F.R. §§ 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Plaintiff contends that the ALJ failed to properly account in the RFC for limitations stemming from her mental impairments.  Specifically, Plaintiff argues that the ALJ failed to properly consider the mental limitations described by Dr. Young, a consultative examining psychologist, and Dr. Meyers and Dr. Ames-Dennard, the state agency medical consultants, in setting forth the RFC.  According to Plaintiff, the opinions of Drs. Young, Meyers, and Ames-Dennard describe mental limitations far greater than those in the RFC and which preclude work.  Additionally, Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject the opinions of Drs. Young, Meyers, and Ames-Dennard.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the

impairments, and physical or mental restrictions. 20 C.F.R. § 416.927(a)(1). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. § 416.927.[2] In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. § 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 416.927(c)(3). Further, the more consistent the medical opinion is with the record, the more weight that opinion will receive. 20 C.F.R. § 416.927(c)(4). As detailed below, the ALJ erred in his consideration of the opinions of Drs. Young, Meyers, and Ames-Dennard, and remand is therefore warranted.

### i.     Dr. Young

At the request of the SSA, Dr. Young conducted an independent clinical evaluation with mental status of Plaintiff in June 2017 (Tr. 394-97). Dr. Young indicated that Plaintiff's facial expressions were full and responsive but reflected a

---

[2] The ALJ indicated that Plaintiff had a protective filing date of March 17, 2017 for her SSI application (Tr. 22). Accordingly, 20 C.F.R. § 416.927 applies to her claim, as it pertains to the evaluation of opinion evidence for claims filed before March 27, 2017.

moderately dysphoric mood and that her energy level seemed reduced (Tr. 394).

Dr. Young observed Plaintiff's mood as "severely dysphoric with a corresponding

anxious and severely depressed affect" and noted that, "[a]t one point she became

tearful and openly wept, at times uncontrollably, and had to be given time to calm

herself down" (Tr. 395).   Though Plaintiff did not show any difficulty interacting

with clinic staff and could complete the evaluation without incident, Dr. Young

noted that Plaintiff made intermittent eye contact with him and appeared mildly

uncomfortable with the interpersonal aspects of the evaluation process throughout

the course of the evaluation (Tr. 394).  He noted that Plaintiff never exhibited any

overt oppositionality toward him, seemed willing to discuss her personal history

without reservation, answered questions posed to her in a straightforward manner,

and provided reasonably well-detailed responses (Tr. 394).    While Plaintiff

demonstrated difficulty recalling specific dates and times for personal historical

information, Dr. Young found Plaintiff to be a reliable historian and estimated

Plaintiff's intellectual level to fall within the average range (Tr. 394-95).  During the

clinical interview, however, Plaintiff experienced some mild difficulty maintaining

her attention and concentration and her overall processing speed appeared below

average (Tr. 395).  Plaintiff expressed clear, focused, and goal-oriented thinking free

of any evidence of an active thought or perceptual disorder and never manifested

any impulsivity or hyperactivity (Tr. 395).   Dr. Young noted that Plaintiff's

receptive and expressive language abilities appeared intact, she spoke in a normal

tone and pace of voice, her vocabulary seemed average and unremarkable, and she

could engage in spontaneous conversation (Tr. 395).

Dr. Young performed a mini mental status exam and a WAIS-IV digit span task with mixed results (Tr. 395). The mini mental status exam revealed no cognitive impairment, but the attempt to perform the WAIS-IV digit span task failed and resulted in invalid results due to Plaintiff's emotionality appearing to interfere to such a degree that it rendered the results invalid (Tr. 395). Dr. Young opined that such results could possibly relate to malingering or to Plaintiff's adoption of such a significant learned helplessness that her ability to produce a valid measure on the tasks was impaired (Tr. 395).

During the examination, Plaintiff reported an ability to perform a range of daily activities independently, including performing all her hygiene requirements, grocery shopping, using public transportation, making meals, and doing laundry (Tr. 395). She also reported a history of abuse as a child and as an adult, leading to a diagnosis of PTSD, and a diagnosis of bipolar I disorder, although she indicated she had not experienced a manic episode in a long time (Tr. 395-96). Plaintiff told Dr. Young that she experienced chronic depression for many years, especially following the accidental overdose of the father of her children, as well as several episodes of suicidality and at least four past inpatient psychiatric admissions (Tr. 396). Though she had been prescribed medication by a psychiatrist, she denied participating in counseling or psychotherapy (Tr. 396).

Based upon Plaintiff's presentation during examination, Dr. Young offered the following summary of his findings and recommendations:

[Plaintiff's] presentation was consistent with her self-report. Collectively she came across as a severely depressed and anxious adult female with a history of PTSD associated with both childhood and adult abuse. She also appeared to manifest some cluster B personality traits and in general seemed quite dramatic in her presentation. During the MMSE it was necessary to discontinue the digit span task due to her underperforming which seemed to be related to a combination of her acute emotionality and personality traits [(]likely learned helplessness). Although she has been prescribed psychiatric medication she likely would benefit from adjunctive counseling as well. [Plaintiff] seems to have adequate social support from her friend but very limited coping skills and therefore likely is at risk for future behavioral and/or emotional decompensation. Her history of suicidality and inpatient psychiatric admission indicates a potential for such decompensation without ongoing psychiatric care.

Medical personnel will have to comment on the veracity of her physical health complaints and the severity of their impact on her ability to work. At the present time her psychiatric health problems appear significant enough to produce a severe degree of work-related interference. [Plaintiff's] prognosis is guarded to poor without the recommended interventions and mediating factors being the severity and course of her physical health and psychiatric health problems, limited education and job skills and her personality features.

(Tr. 396-97). In rendering the decision, the ALJ considered the opinion of Dr. Young (Tr. 29-30). After summarizing only some of Dr. Young's findings from the examination, the ALJ did not afford much weight to Dr. Young's opinion, indicating:

The claimant underwent an independent mental health examination with Dr. Robert Young, Ph.D. The doctor found the claimant was appropriately dressed and groomed[,] was able to interact appropriately, showed average intelligence, had clear and focused thought, had mild difficulty maintaining attention and concentration, had normal speech, [and] was free of any perceptual or active thought disorder. She did appear depressed[] but showed no cognitive problems. Quite tellingly, the claimant did not mention hearing any voices. The doctor specifically found malingering or that the claimant has adopted a significant learned helplessness. The claimant admitted to the examiner that she was able to shop, use public transport, that

she lived with a friend, that she could handle her own money, make meals, do laundry, do household chores and take care of a pet. The claimant admitted it has been a long time since she had a manic episode. The doctor also noted the claimant was underperforming during part of the testing.

Despite the identification of likely malingering and underperforming, the doctor seemed to accept the claimant's self-reported limitations. The doctor tried to justify it as merely the claimant's learned helplessness, but this ignores the actual findings upon review that are fairly mild. Despite all of this, the doctor went on to opine that the claimant's psychiatric problems "appear significant enough to produce a severe degree of work-related interference." The doctor found the claimant's prognosis was guarded. Not much weight is given to this opinion, as it seems to ignore the doctor's own findings and notations of likely malingering and underperforming. Moreover, the opinion is inconsistent with the opinions of the state's mental health experts.

(Tr. 29-30) (internal citations omitted).

As demonstrated by the ALJ's discussion, the ALJ did not mention or apparently consider several of Dr. Young's more severe findings, which in fact supported Dr. Young's overall finding and recommendations, but instead substituted his own interpretation of Dr. Young's treatment notes for that of Dr. Young. Indeed, except for the single acknowledgement that Plaintiff "did appear depressed," the ALJ appears to have selected only the observations from Dr. Young that support his disability finding rather than considering, for example, Dr. Young's findings that Plaintiff's mood was severely dysphoric, her affect was anxious and severely depressed, she wept uncontrollably during examination, she was uncomfortable with interpersonal aspects of the evaluation process, and her underperformance seemed to be related to a combination of her acute emotionality and personality traits.

Further, as Plaintiff contends, several factors weigh in favor of potentially affording Dr. Young's opinion greater weight. Primarily, Dr. Young examined Plaintiff, he is a licensed psychologist, and he is a state agency psychological consultant and is thus considered a highly qualified expert in the context of Social Security disability evaluation. 20 C.F.R. §§ 416.913a(b)(1), 416.927(c)(1) & (5). Moreover, considering Dr. Young's findings in conjunction with the findings of Dr. Meyers and Dr. Ames-Dennard, discussed in greater detail below, the ALJ failed to fully and properly consider Plaintiff's mental impairments and the limitations related thereto. As substantial evidence does not support the ALJ's consideration of Dr. Young's opinion, remand is appropriate for reconsideration of Dr. Young's findings and opinion.

### ii.    Dr. Meyers and Dr. Ames-Dennard

Likewise, the ALJ should reconsider the opinions of Dr. Meyers and Dr. Ames-Dennard upon remand. In a cursory fashion, the ALJ stated that both state agency medical consultants believed that Plaintiff could perform simple work with limited social contact (Tr. 30, 92-95, 98-99, 104-11, 115-16). Given that the opinions were from mental health experts and, according to the ALJ, were supported by the evidence of record, the ALJ afforded the opinions great weight (Tr. 30). Despite affording great weight to the opinions, the ALJ did not address more significant limitations identified by both Dr. Meyers and Dr. Ames-Dennard. Specifically, the ALJ failed to address more significant social limitations set forth by each.

Namely, in June 2017, Dr. Meyers reviewed Plaintiff's medical records and concluded that Plaintiff suffered from (1) depressive, bipolar, and related disorders; (2) anxiety and obsessive-compulsive disorders; and (3) personality and impulse-control disorders (Tr. 94). Dr. Meyers found that Plaintiff experienced moderate limitations in her ability to interact with others and mild limitations in her ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage herself (Tr. 94). Dr. Meyers indicated that Plaintiff did not experience any understanding and memory limitations nor any sustained concentration and persistence limitations, stating that the evidence suggested Plaintiff maintained the capacity to understand and retain both simple and complex instructions and maintained the capacity to persist at tasks (Tr. 98). Dr. Meyers further found that Plaintiff did not experience adaptation limitations and was not significantly limited in her ability to maintain socially appropriate behavior or to adhere to basic standards of neatness and cleanliness, finding that the evidence suggested the capacity to adapt adequately in the work environment but also stating that social interactions were harder for Plaintiff than her peers such that she would function best at tasks with little to no social demands for communicating with others (Tr. 99). More specifically, as to social interaction limitations, Dr. Meyers found that Plaintiff experienced moderate limitations in her ability to interact appropriately with the general public and to get along with her coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 98-99). Notwithstanding, Dr. Meyers opined that Plaintiff retained the ability to mentally

14

perform as discussed in her mental RFC, including that Plaintiff retained the ability to perform tasks at higher levels despite the moderate limitations noted, with limited social contact, and that Plaintiff could meet the basic mental demands of work on a sustained basis, despite any limitations resulting from her medical impairments (Tr. 99).

Later, in September 2017, Dr. Ames-Dennard determined that Plaintiff experienced the same mental impairments (Tr. 110-11).  As a result of those impairments, Dr. Ames-Dennard found that Plaintiff experienced moderate limitations in her ability to interact with others and to adapt or manage herself and mild limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace (Tr. 110).  Dr. Ames-Dennard further concluded that Plaintiff experienced limitations with sustained concentration and persistence, including moderate limitations in her ability to maintain attention and concentration for extended periods and in her ability to work in coordination with or in proximity to others without being distracted by them (Tr. 115).  Like Dr. Meyers, Dr. Ames-Dennard concluded that Plaintiff experienced moderate limitations in her ability to interact with the general public and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and, therefore, Plaintiff would function best at tasks with little to no social demands for communicating with others as social interactions were harder for her than others in her peer group (Tr. 116).  Dr. Ames-Dennard noted that the evidence suggested that Plaintiff maintained the capacity to understand and retain both

simple and complex instructions and to adapt adequately in the work environment (Tr. 115 & 116).  Dr. Ames-Dennard concluded that Plaintiff could perform simple, repetitive tasks; could perform tasks at a higher level despite her moderate limitations but with limited social contact; and could meet the basic mental demands of work on a sustained basis, despite any limitations resulting from her medical impairments (Tr. 116).

Both Dr. Meyers and Dr. Ames-Dennard concluded that Plaintiff experienced more than just moderate limitations in her ability to interact with the public.  They each concluded that Plaintiff experienced moderate limitations with her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and would function best at tasks with little to no social demands for communicating with others.  Notwithstanding, the sole social limitation identified by the ALJ involved limiting Plaintiff to only occasional interaction with the general public (Tr. 27).  Neither the RFC nor the ALJ's hypotheticals to the VE address social interaction with coworkers or supervisors (Tr. 27-30, 63-67), which, based upon the findings of Dr. Meyers and Dr. Ames-Dennard is an omission requiring explanation, especially based on the ALJ's decision to afford great weight to those opinions and to afford not much weight to the opinion of Dr. Young.  Nothing in the ALJ's decision addresses such omission. Upon remand, the ALJ should address all of Plaintiff's social limitations, including whether Plaintiff requires a limitation regarding interactions with coworkers and supervisors.

### iii.   Lack of Mental Health Treatment

As Plaintiff notes, in considering Plaintiff's mental impairments, the ALJ highlighted the fact that Plaintiff had "not had a lot of mental health treatment during the time under review" (Tr. 29).  The decision does not demonstrate that the ALJ considered Plaintiff's inability to obtain such treatment due to poverty, lack of insurance, and homelessness (Tr. 29-30).   During the administrative hearing, Plaintiff testified that she did not have medical insurance to cover medical care she needed, did not have a driver's license due to her inability to pay fees associated with a DUI, and was effectively homeless, as she did not have a permanent residence, had to bounce from place to place, and had to stay with friends when she could or sleep outside (Tr. 41-44, 58, 62).  As the Eleventh Circuit has repeatedly emphasized, poverty excuses noncompliance with medical treatment.  *See* 20 C.F.R. § 416.930(a) & (b); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("We have held that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability, and poverty excuses noncompliance. Additionally, when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.") (internal citations and quotation marks omitted); *see Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("We agree with every circuit that has considered the issue that poverty excuses noncompliance.").  Though not the only

basis for the denial of disability benefits, the ALJ cited to the lack of mental health treatment without indicating that he considered Plaintiff's ability to afford or obtain such treatment.  If, on remand, the ALJ considers Plaintiff's lack of mental health treatment, the ALJ should address Plaintiff's ability to afford or obtain such treatment.

### B.    Headaches

Plaintiff also contends that the ALJ failed to properly consider her migraine headaches in setting forth the RFC, despite finding that her migraine headaches constituted a severe impairment.  In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 416.929.  To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 416.929.  Consideration of a claimant's symptoms thus involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain.  20 C.F.R. § 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9.  If the Commissioner

determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the Commissioner evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities.  20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9.  When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225 (citation omitted).  A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*).

Here, during the administrative hearing, Plaintiff testified that she experienced migraines approximately twice per month, with each lasting for approximately ten days (Tr. 60).  According to Plaintiff, her migraines caused nausea, vomiting, and sensitivity to light and sound (Tr. 60, 548).  The record indicates that Plaintiff received regular Nubain injections and Clonidine to help with her symptoms and that, on at least one occasion, she decompensated when she missed an injection and went to the emergency room for treatment (Tr. 548-49, 598, 604, 621, 625, 634-35, 639, 654-55, 659-60, 664-65, 669, 674, 681, 685, 689-90, 694, 699, 704-05, 709, 724, 740, 745, 749).  She reported migraine pain level of anywhere between a three to an eight on a 10-point scale (Tr. 385, 631-34, 682, 706-09).  Plaintiff's migraines were noted to be on and off, occasionally severe and chronic,

sometimes noted as controlled, without mention of intractability, and both with and without aura (Tr. 380, 381, 384, 385, 388, 585, 588, 590, 593, 595, 601, 604, 606, 612, 615, 617, 622, 625, 626, 631, 636, 641, 644, 651, 654, 656, 661, 669, 671, 677, 682, 685, 686, 689, 694, 696, 699, 701, 704, 706, 709, 711, 714, 719, 721, 724, 727, 730, 732, 735, 737, 742, 745, 746, 749, 751).  Plaintiff contends that the ALJ failed to sufficiently address Plaintiff's migraine headaches and the attendant limitations, including, most significantly, Plaintiff's inability to stay on task for considerable periods of time due to pain until the migraine subsides.

Indeed, with little explanation, the ALJ found only that Plaintiff's migraines were without aura and not intractable and that Plaintiff's doctor considered the pain to be controlled with medication and injections (Tr. 28).  According to the ALJ, Plaintiff's "self-serving allegations" regarding her migraines lasting 10 days were "simply not supported by the record" (Tr. 28).  Notwithstanding, the ALJ indicated that he reduced the RFC to accommodate for limitations stemming from her migraine headaches, including limitations to avoid concentrated exposure to bright, flashing lights and to engage in simple, routine, repetitive tasks not performed in a fast-paced production environment with only simple work-related decisions and relatively few workplace changes (Tr. 27-28).  Given the remand for reconsideration of Plaintiff's mental impairments and the medical opinions regarding the related limitations, the ALJ should more fully address Plaintiff's migraine headaches and, to the extent necessary, any limitations due to Plaintiff's need to be off task while experiencing a migraine headache.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.       The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.       The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

21